### J. S. Bracken v. The State.

*No. 3054.    Decided February 28.*

1. **Certiorari to Perfect Record.**—A certiorari to perfect the record by bringing up special instructions requested by the defendant on a former trial of the cause, but not again requested on the subsequent trial, will not be awarded, because such instructions do not constitute a part of the record in the cause.

2. **Special Instructions.** — If special instructions requested at one trial are not again requested on a subsequent trial, they are considered as waived or abandoned and lose their force and efficacy, and are entitled to no further consideration as a part of the record in the case.

3. **Record of a Cause.** — The "record of the cause" consists of the papers and proceedings entered upon the minutes incidental to and connected with the case to be tried, and which are had and used at the last trial of the case.

4. **Same—Charge of the Court.** — In each subsequent trial of a cause the court must charge the jury anew, and the same rules apply in such subsequent trials as to the charge and requested instructions as in the first trial. The "record of the cause," within the meaning of article 680, Code of Criminal Procedure, relating to the charge, embraces the charges given or refused on the particular trial, and does not embrace those given or refused on any other trial of the cause.

5. **Manslaughter—Adequate Cause—Charge of the Court.**—It is a rule now well settled that where the evidence shows a number of conditions tending, either singly or collectively, to constitute what a jury might consider adequate cause, the court should leave the jury at liberty to consider them all in determining whether or not adequate cause existed. While it is true that the provocation must arise at the time of the commission of the offense, and the passion must not be the result of a former provocation, yet in passing upon the sufficiency of the provocation and on the effects of the passion upon the mind of the defendant, the past conduct of deceased towards defendant, his threats and bearing, and in fact all the facts and circumstances of the case, should be considered by the jury. An act standing alone may not be sufficient provocation, but may be ample when one in a series of similar acts, or when it has been preceded by an insolent and aggravating course of conduct, whether similar or not to the act committed at the time of the homicide. In this case it is *held* that the charge of the court upon the issue of manslaughter is insufficient, in that it does not instruct the jury plainly and pertinently that they could and should consider the antecedent facts and circumstances in evidence in determining whether or not adequate cause existed.

6. **Same.**—The charge of the court should be based upon and pertinent to the evi-

dence. In this case the court in instructing the jury upon the issue of manslaughter copied subdivisions 1 and 2 of article 597, Penal Code. *Held,* that these subdivisions were inapplicable to the evidence, and that the charge in this respect tended to mislead and confuse the jury.

APPEAL from the District Court of Cooke.    Tried below before Hon. D. E. Barrett.

The indictment charges defendant with the murder of James Wright, by shooting said Wright with a gun, on May 13, 1889. The conviction is for murder in the second degree; the punishment assessed confinement in the penitentiary for ten years.

The evidence and the charge of the court upon the issue of manslaughter are sufficiently stated in the opinion of the court, rendering it unnecessary that the same should be set forth in this statement. No bill of exception to the charge of the court appears in the record. That portion of the charge relating to manslaughter was complained of in defendant's motion for a new trial in the particulars discussed in the opinion of the court.

*Potter, Potter & Mathis,* for appellant, contended.—1. The charge upon the issue of manslaughter is erroneous in limiting the consideration of the jury in determining adequate cause to the acts of the deceased at the time of the killing. It should have instructed the jury that the acts of the deceased at the time of the killing must be regarded and interpreted in the light of all that had gone before.

In support of the above proposition the following authorities are cited: Williams v. The State, 15 Texas Ct. App., 617; Miles v. The State, 18 Texas Ct. App., 170; Johnson v. The State, 22 Texas Ct. App., 221; Paulin v. The State, 21 Texas Ct. App., 436; Cochran v. The State, 28 Texas Ct. App., 422.

2. It was error to instruct the jury that an assault and battery causing pain or bloodshed would be adequate cause; also that a serious personal conflict in which great injury was inflicted would constitute adequate cause. There was no evidence to which such instructions were applicable.

*R. H. Harrison,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—A preliminary motion for a certiorari to perfect and complete the record will be disposed of before we enter upon a discussion of the merits of the case.

Two trials have been had in this case—the first in December, 1889, which resulted in a mistrial, and the second in December, 1890, resulting in a verdict and judgment of murder of the second degree, from which this appeal is being prosecuted.

It appears that on the first trial in 1889 defendant, by his counsel, re-

quested the court to give in charge to the jury four special instructions, which the court refused.

At the second trial in 1890 these four special instructions were neither presented nor called to the attention of the court, nor was the court requested to give them in charge to the jury. No action of any kind was asked or taken in reference to them.

Appellant's motion for certiorari is in order that these four special instructions may be brought up as part of the record on this appeal and be considered by us as instructions which should have been given, but were refused by the court on the second trial.

The contention is that instructions once asked and refused and filed with the record are and should be treated as part of the case in all subsequent proceedings and trials, the same as though they had been presented to and acted upon and filed at said trials.

Such is not our understanding or construction of the rule of practice as announced in article 680, Code of Criminal Procedure, which reads: "The general charge given by the court, as well as those given or refused at the request of either party, shall be certified by the judge and filed amongst the papers in the cause, and shall constitute part of the record in the cause."

This relates to charges given or refused on the particular trial, and not to other and different trials, or all the trials had in a case, if more than one.

The "record of a cause" consists of the papers and proceedings entered upon the minutes incidental to and connected with the case to be tried, and which are had and used at the trial.

A case may be tried any number of times, and yet the record when made up will only consist legitimately of the matters and things used in and pertinent and necessary to the last trial, together with the minutes of the same.

If there are a dozen trials, the court is as much bound to charge the jury anew upon the last as in any preceding trial, and the same rules apply to the charge and requested instructions as though but a single trial only had taken place. Code Crim. Proc., arts. 677, 678, 679, 680, 683, 684, 685.

If special instructions requested at one trial are not requested again on a second trial, they are, as charges, considered as abandoned or waived, and lose their force and efficacy for any purpose—in fact become, so to speak, *functus officio*—and are entitled to no further consideration as part of the record in the case.

The special instructions sought to be brought to this court by means of the certiorari being no part of the record of the case as tried in the court below from which this appeal is taken, appellant's motion for the writ is refused and overruled.

*Motion for certiorari overruled.*

With regard to the merits of the case, the first error—and in fact, it is the chief matter complained of in the able oral argument and printed brief of counsel for appellant—is as to the correctness and sufficiency of the charge of the court upon manslaughter.

It is insisted that the phase of the law of manslaughter really and properly raised by the evidence was not given to the jury at all, and that as given it was wholly insufficient and wholly inapplicable, and only tended to confuse and mislead the jury, to the evident injury of appellant.

Appellant and deceased were brothers-in-law, appellant having married a sister of the deceased. A serious difficulty had occurred between them about eight years prior to the killing, since which time a deadly enmity appears to have existed on the part of deceased toward defendant, evincing itself in frequent and continuous insults whenever the parties met, and in many deadly threats upon his part to whip and kill defendant. Defendant was greatly terrorized by his conduct; avoided coming in contact with him; procured other relatives to intercede with deceased to compromise and settle their troubles and become reconciled and friendly. Such overtures were declined by deceased, and only provoked from him renewed evidences and threats of hostility. Defendant was a weakly, sick man; deceased athletic and powerful, and moreover he went constantly armed, saying that he carried his weapons for defendant, and perhaps one or more parties, friends of defendant, against whom he entertained serious enmity. All this was known to defendant, who had been fully informed of the facts by his neighbors, and warned and advised by them to avoid deceased. The killing occurred on Monday. On the Friday preceding deceased put in circulation a report that defendant had used damaging and insulting language concerning the character of the wife of a neighbor and friend of defendant, and at his instance and request this reputed slander was communicated to the husband. Defendant being apprised of these facts on Sunday evening, went immediately to see the outraged husband of the slandered wife, and to him in person denounced and repudiated the authorship of the vile slander. The naturally indignant husband told him "he must fix the matter up pretty d—n quick," and agreed to give him until Monday night to prove to him that he was not the author. Defendant, in this strait and pressure of circumstances, determines to see deceased; and, believing in all probability a difficulty would ensue, cleans and loads his gun to take with him. He determines before seeing deceased that he will advise and confer with two neighbors, who live on the road between his and deceased's house, with regard to the matter, and to get them or some of the neighbors to go with him and be present at the interview. On Monday morning he mounts his horse, and taking his gun with him, starts to the house of these neighbors. When he had approached near the lot to their house, through which his road led, he saw Davis, one of the neighbors he wished to see, and

Wright, the deceased, standing against the fence on the inside of the lot and near the gate through which he had to pass. He did not expect to see Wright there; the meeting was accidental. He could easily have shot him from his horse. "But," he says, "when I saw him, I thought I would call Davis off and confer with him, and perhaps, as Wright was there, the matter might be settled." He dismounted, hitched his horse, took his gun from the scabbard, held it down by his side, entered the lot, and after speaking to Davis started to the barn some thirty steps distant, where he proposed to confer with him. Neither he nor Wright spoke to each other, but Wright glared at him with his accustomed malignant stare, and he kept his eye fixed on Wright, as he feared that Wright meant and would do him harm. When he had gone some few steps towards the barn Davis started to follow him. Wright also started after him, keeping behind Davis. He says that when he had walked some ten or fifteen steps, and Davis and Wright were getting closer to him, he saw Wright put his hand to his right hip pocket, and when Wright approached so close that he was afraid he would grab his gun with one hand and shoot him with the other, he called to him to "hold up," but Wright continuing to advance with his left hand extended towards him, his right hand in his hip pocket, and in an attitude as though about to jump and grab his gun, he threw up his gun and fired twice in rapid succession. Wright fell at the second shot, and died in a few moments.

Davis testified as a witness for the State. His testimony in most particulars coincides with defendant's, except that he says that he did not see Wright after they started following defendant; did not know that Wright was behind him, and consequently saw no movements or actions made by Wright; did not know he had changed his position until after he was shot. Wright's body was searched and no arms were found upon him except a pocket knife, shut up in his pants pocket. In brief, these are the facts disclosed in the record.

Upon the law of manslaughter the court instructed the jury in the very language of the statutory provisions defining the crime and its characteristics (Penal Code, articles 593, 594, 595), and he followed these instructions immediately in the ninth paragraph of the charge, in which he instructed them that the following are deemed "adequate causes," and then he copies the first two subdivisions of article 597, Penal Code, with regard to assault and battery causing pain and bloodshed, and a serious personal conflict, etc.

This instruction was entirely inapplicable in either phase of the facts in this case. There was no assault and battery by the deceased, and no serious personal conflict in which any injury had been inflicted by the person killed. Even if used as examples, the examples having no possible relation to the facts could have only tended to mislead and confuse

the jury.　Hackett v. The State, 13 Texas Ct. App., 400; Steagald v. The State, 22 Texas Ct. App., 465.

It is true that in the tenth paragraph the jury were further instructed that "the enumeration of the foregoing adequate causes is merely intended as examples of what the law regards as adequate causes, and not as excluding any other good and sufficient cause which would produce the state of mind defined in the eighth section of these instructions. Any condition or circumstance which is capable of creating and which does create sudden passion, such as anger, rage, sudden resentment, or terror, rendering the mind incapable of cool reflection, whether accompanied by bodily pain or not, is adequate cause," etc.

This instruction does not cure, but rather intensifies the error, by again alluding to "bodily pain" in connection with adequate cause. "Bodily pain" had nothing to do with the adequate cause claimed in this case, and the instruction in general terms that "any condition or circumstance which is capable of causing and which does cause sudden passion, etc., is adequate cause," whilst correct as a legal proposition, did not explain to the jury or submit to them the adequate cause relied on under the facts of this case. It gave no information to the jury directly pertinent to this issue.

It is a rule now well settled that "where the evidence shows a number of conditions and circumstances tending, either singly or collectively, to constitute what a jury might consider adequate cause, the court should leave the jury at liberty to consider them all in determining whether or not adequate cause existed." Orman v. The State, 24 Texas Ct. App., 495; Cochran v. The State, 28 Texas Ct. App., 422.

In Miles's case, 18 Texas Court of Appeals, 170, it was said: "Now, while it is true that the provocation must arise at the time of the commission of the offense, and the passion must not be the result of a former provocation, yet in passing upon the sufficiency of the provocation and on the effects of the passion upon the mind of the defendant, the past conduct of deceased towards defendant, his threats and bearing—in fact, all the facts and circumstances of the case—should be considered by the jury. An act standing alone may not be sufficient provocation, but may be ample when one in a series of similar acts, or when it has been preceded by an insolent and aggravating course of conduct, whether similar or not to the act committed at the time of the homicide." This language is again quoted in Johnson's case, 22 Texas Court of Appeals, 206, with numerous authorities cited.

In the case in hand the jury should have been instructed in a plain and pertinent manner, so that they might be informed that they could and should consider the antecedent facts and circumstances in evidence in determining adequate cause on the issue of manslaughter. The court had instructed them that the provocation must arise at the time of the com-

mission of the offense, and that the passion must not be the result of a former provocation. Unless told otherwise they might probably conceive, and likely did conclude, that they could not consider these antecedent matters in this connection.

It is true that the court, in the fifteenth paragraph of the charge, when he is again submitting the issue of manslaughter, does tell the jury if they find the fact of killing, "but if from all the facts and circumstances in evidence before you, and by reason thereof, you find that at the time," etc., the mind was incapable of cool reflection, "and that said facts and circumstances were sufficient to produce such state of mind," etc., "then you will find defendant guilty of manslaughter," etc. Unquestionably this instruction would permit them to consider all the facts and circumstances, antecedent as well as proximate, but they were nowhere told plainly that it was their duty to consider those antecedent matters, and, as before said, under the circumstances they might well be led into the belief from the previous instructions, notwithstanding the language of the fifteenth paragraph, that they could not do so. They should have been afforded an opportunity to do so in plain and unmistakable terms. In this respect the charge given, taken as a whole, upon manslaughter fell short of the law applicable to and demanded by the facts.

We are of the opinion that the charge upon self-defense and appearances of danger was fair, full, and explicit in apprising the jury that the appearances of danger must be judged from the defendant's standpoint, and not as they appeared to them after hearing the evidence.

As to other matters presented in the bills of exception, inasmuch as they may not occur on another trial, we deem it unnecessary to discuss them.

Because in our opinion the charge of the court was insufficient and did not submit fully the law applicable to the issue of manslaughter as made by the evidence in this particular case, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Davidson, J., being disqualified, did not sit in this case.